Joel E. Elkins (SBN 256020)
Email: jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd, Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEETMING CHEW, on Behalf of Himself and All Others Similarly Situated, | Case No. |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| JIVE SOFTWARE, INC., ELISA A. STEELE, ANTHONY ZINGALE, MARGARET A. BREYA, STEPHEN R. DARCY, ROBERT FRANKFURT, PHILIP KOEN, THOMAS J. REILLY, CHARLES J. ROBEL, GABRIELLE TOLEDANO, and BALAJI YELAMANCHILI, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Keetming Chew ("Plaintiff"), on behalf of himself and all others similarly situated,

upon information and belief, including an examination and inquiry conducted by and through his

counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

belief, alleges the following for his Class Action Complaint:

## NATURE AND SUMMARY OF THE ACTION

1.     This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Jive Software, Inc. ("Jive" or the "Company") against Jive and the members of Jive's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9") and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Jive will be acquired by Wave Systems Corp. ("Wave"), a wholly owned subsidiary of ESW Capital, LLC (together with its subsidiaries and affiliates, the "ESW Group"), through Wave's wholly owned subsidiary Jazz MergerSub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On May 1, 2017, Jive issued a press release announcing it had entered into an Agreement and Plan of Merger dated April 30, 2017 (the "Merger Agreement") to sell Jive to Wave.  Under the terms of the Merger Agreement, Wave will acquire all shares of Jive common stock for $5.25 per share in cash (the "Offer Price").  Pursuant to the Merger Agreement, the Tender Offer commenced on May 12, 2017, and is scheduled to expire at midnight Eastern time, at the end of June 9, 2017 (the "Expiration Date").  The Proposed Transaction is valued at approximately $462 million.

3.     On May 12, 2017, Jive filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement, which recommends that Jive stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Jive's financial projections, relied upon by Jive's financial advisor Morgan Stanley

& Co. LLC ("Morgan Stanley") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley; and (iii) the background process leading to the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Jive stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction.

4.     In short, the Proposed Transaction will unlawfully divest Jive's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Jive is

incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Jive.

9.      Defendant Jive is a Delaware corporation and maintains its principal executive offices at 300 Orchard City Drive, Suite 100, Campbell, California 95008. The Company's common stock is traded on the NASDAQ under the symbol "JIVE."

10.     Defendant Elisa A. Steele ("Steele") is the Chief Executive Officer ("CEO") of the Company and has been a director since February 2015.

11.     Defendant Anthony Zingale ("Zingale") has been Chairman of the Board since August 2011 and a director of the Company since October 2007. Defendant Zingale previously served as CEO from February 2010 through November 2014.

12.     Defendant Margaret A. Breya ("Breya") has been a director of the Company since August 2013.

13.     Defendant Stephen R. Darcy ("Darcy") has been a director of the Company since April 2016.

14.     Defendant Robert Frankfurt ("Frankfurt") has been a director of the Company since March 2017.

15.     Defendant Philip Koen ("Koen") has been a director of the Company since March 2016.

16.     Defendant Thomas J. Reilly ("Reilly") has been a director of the Company since April 2013.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

17.    Defendant Charles J. Robel ("Robel") has been a director of the Company since December 2010.

18.    Defendant Gabrielle Toledano ("Toledano") has been a director of the Company since November 2015.

19.    Defendant Balaji Yelamanchili ("Yelamanchili") has been a director of the Company since August 2016.

20.    Defendants Steele, Zingale, Breya, Darcy, Frankfurt, Koen, Reilly, Robel, Toledano, and Yelamanchili are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21.    Wave is a Delaware corporation with its principal executive offices located at 401 Congress Avenue, Suite 2650, Austin, Texas 78701.  Wave develops, produces, markets and sells products for hardware-based digital security in the United States and internationally.

22.    Merger Sub is a Delaware corporation and wholly owned subsidiary of Wave.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Jive common stock (the "Class").   Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

24.    Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

25.    The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be

ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.   As of May 10, 2017, there were approximately 79,765,447 shares of Company common stock issued and outstanding.   All members of the Class may be identified from records maintained by Jive or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

26.   Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)   Whether defendants have violated Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder;

(b)   Whether the Individual Defendants have violated Section 14(e) of the Exchange Act;

(c)   Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(d)   Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

27.   Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

28.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

29.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Company Background and Strong Financial Outlook**

30.    Jive is a software company incorporated in 2001 that creates products to enable a more productive and effective workforce through enhanced communications and collaboration.  The Company's traditional enterprise software product offerings, based on the Jive platform, are provided to customers as cloud-based, hosted or on-premise solutions. Jive's products are primarily offered on a subscription basis and can be used for internal or external communities.  The Company generates revenues from product subscription license fees and from professional service fees for strategic consulting, configuration, implementation, and training.

31.    On February 7, 2017, Jive issued a press release announcing its fourth quarter and full year 2016 financial results.  For the quarter, the Company reported revenue of $51.7 million, an all-time quarterly record and a 3% increase from the fourth quarter of 2015. Revenue also achieved an all-time annual record of $204.1 million for 2016, a 4% increase from 2015.  GAAP gross profit for the quarter was $36.1 million, compared to $31.5 million for the fourth quarter of 2015.  For the year, GAAP gross profit was $136.7 million compared to $123.6 million for 2015.  GAAP net income for the quarter was $0.9 million, compared to a GAAP net loss of $8.5 million in the fourth quarter of 2015.  Defendant Steele commented on the strong financial results, stating:

> Strong execution resulted in another quarter that exceeded our expectations as we achieved record revenue, continued to improve profitability, increased cash flow from operations and gained momentum across the business. . . . GAAP income from operations for the fourth quarter was $0.6 million, an increase of $8.2

million compared to one year ago. Non-GAAP operating income was $5.1 million, and represents the third quarter in a row that we have delivered on our commitment to operate within a sustainably profitable non-GAAP operating model. In addition, we generated $9.8 million in positive cash flow from operations compared to negative $4.2 million in the fourth quarter last year.

Based on the transformation work we did in 2016 to realign the company, we are strategically poised for success as we enter 2017. We have made great strides in our operational excellence initiatives, and have positioned Jive's unique value proposition in the market to solve the growing problems of digital fragmentation across the enterprise workplace. We have stabilized the business, and we are vigorously building the foundation for future growth while maintaining a disciplined cost structure. We are confident that we are doing all the right things to generate increased demand for our products, as well as drive long-term value for both customers and shareholders.

**The Sale Process**

32.    In April and May of 2015, Jive received inbound inquiries and held discussions with two financial advisors, referred to in the Recommendation Statement as "Party A," and Francisco Partners IV, L.P. ("Francisco Partners"), regarding the possibility of a strategic transaction with the Company.

33.    On August 13, 2015, Jive received an inquiry from a potential strategic acquiror, referred to in the Recommendation Statement as "Party B," expressing interest in a potential acquisition of the Company. The Company subsequently held an introductory call with Party B on August 24, 2015. The Company also held meetings with Francisco Partners and Party A in August and September 2015.

34.    On September 18, 2015, Jive received an inquiry from another potential strategic acquiror, referred to in the Recommendation Statement as "Party C," regarding a potential acquisition, investment or commercial partnership with the Company.

35.    On October 6, 2015, the Company sent proposed confidentiality agreements to each of Party A and Francisco Partners, which were subsequently signed. The Recommendation Statement fails to disclose whether these confidentiality agreements

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

contain standstill provisions that are still in effect and operate to preclude either party from making a competing bid for the Company.

36.    On January 7, 2016, Party A sent Jive a non-binding indication of interest to acquire the Company for $5.50 per share in cash.

37.    On January 8, 2016, Francisco Partners informed Morgan Stanley it did not intend to make an offer for the Company.

38.    Following a January 19, 2016 Board meeting, Morgan Stanley contacted eight potential strategic acquirors, including Party B, Party C and parties referred to in the Recommendation Statement as "Party D" and "Party E."  The Company also reached out to a potential strategic acquiror, referred to in the Recommendation Statement as "Party F," on January 16, 2016.  Four of the contacted parties did not express an interest in a potential transaction with Jive.  The Company subsequently signed confidentiality agreements with Party B, Party C, Party D, and Party F.  The Recommendation Statement fails to disclose whether these confidentiality agreements contain standstill provisions that operate to preclude any of these parties from making a topping bid for the Company.

39.    On February 9, 2016, Party A informed Morgan Stanley that it would not reaffirm its previous proposal of $5.50 per share and instead would consider a transaction at $4.00 per share in cash.

40.    On March 8, 2016, Party D informed the Company it was no longer interested in a transaction due to its own restructuring.

41.    Party C did not express interest in a transaction with Jive following confidential management presentations in March and April 2016.

42.    On April 29, 2016, Party A submitted an indication of interest to acquire Jive at a price in the range of $4.50 to $5.00 per share in cash.

43.    On May 2, 2016, Party B asked the Company whether it would be interested in a sale of Jive's social community software, Jive-x, but the Company indicated such a transaction was unlikely.

44.    On May 12, 2016, Party F informed Morgan Stanley it was no longer interested in a transaction with the Company.

45.    From July to December 2016, a financial advisor to the ESW Group contacted a member of the Board in order to introduce the management team of Aurea Software, Inc., an affiliate of the ESW Group, to senior management of the Company.  However, no meeting was ever scheduled during this time.

46.    On October 12, 2016, Jive signed a confidentiality agreement with a potential strategic acquiror, referred to in the Recommendation Statement as "Party G".

47.    On November 28, 2016, Party A indicated it would be interested in an acquisition of the Company for $4.50 per share in cash.

48.    The ESW Group contacted Jive on December 21, 2016 to discuss a potential transaction.  The parties signed a confidentiality agreement on January 11, 2017.

49.    On February 10, 2017, Party G submitted a preliminary proposal to acquire the Company for $4.50 per share in cash.

50.    In January and February 2017, Morgan Stanley contacted one potential strategic acquiror and one financial sponsor, referred to in the Recommendation Statement as "Party H" and "Party I," respectively, to gauge their interest in a potential transaction with Jive. Both parties expressed interest and subsequently signed confidentiality agreements.  The Recommendation Statement fails to disclose whether these confidentiality agreements contain standstill provisions that operate to preclude either party from submitting a topping bid for the Company.

51.   On February 21, 2017, the Company received a letter from Engine Capital LP requesting a meeting with the Board, "urging the Board to take action to unlock stockholder value." However, the Recommendation Statement fails to provide any details regarding Engine Capital LP's letter.

52.   On February 27 and March 9, 2017, Party E and Party I, respectively, informed the Company they were no longer interested in a transaction with Jive.

53.   On March 10, 2017, Jive received an unsolicited inquiry from a potential strategic acquiror, referred to in the Recommendation Statement as "Party J". Two weeks later, Party J indicated it was no longer interested in a transaction with the Company.

54.   On March 22, 2017, the ESW Group submitted to Jive a preliminary indication of interest to acquire Jive at a price in the range of $4.50 to $5.25 per share in cash.

55.   Following a March 29, 2017 Board meeting, Morgan Stanley delivered bid process letters to Party G, Party H and the ESW Group, requesting best and final indications of interest by April 4, 2017.

56.   On April 3, 2017, Party G submitted an updated preliminary proposal to acquire Jive for $5.20 per share in cash.

57.   On April 4, 2017, the ESW Group submitted an updated preliminary proposal to acquire Jive for $4.50 per share in cash. On April 14, 2017, the ESW Group submitted a final proposal to acquire the Company for $5.25 per share in cash, but that it would withdraw its proposal if the Company did not accept the proposal and enter into exclusivity with the ESW Group by April 17, 2017.

58.   On April 15, 2017, Morgan Stanley asked Party G to submit its best and final bid, both in terms of price and contractual terms. The next day, Party G submitted its final proposal to acquire Jive at a price of $5.35 per share in cash, $0.10 *above* the ESW Group's

April 14, 2017 proposal. Party G's final proposal also included a revised material issues list regarding the merger agreement that eliminated or mitigated many of the terms that the Board previously considered meaningful closing risks to completing a transaction with Party G. Party G also withdrew its request for support agreements from some of Jive's largest stockholders, amending another issue the Board had earlier found troubling.

59.    Despite Party G submitting the highest indication of interest and complying with the Board's requests with respect to their material issues list and request for support agreements, the Company entered into an exclusivity agreement with the ESW Group on April 17, 2017.

60.    On April 30, 2017, Morgan Stanley delivered its fairness opinion and the Board approved the Merger Agreement. The parties then signed the Merger Agreement.

**The Proposed Transaction**

61.    On May 1, 2017, Jive issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> CAMPBELL, Calif., May 1, 2017 – Jive Software, Inc. (Nasdaq: JIVE), today announced that ESW Capital, LLC, through its affiliate Wave Systems, is acquiring Jive and that Jive will become a part of the Aurea family of companies. The transaction is valued at $462 million. Under the terms of the agreement, an affiliate of Aurea will commence a tender offer for all of the outstanding shares of Jive common stock for $5.25 in cash per share. This represents a premium of 20% to the average of Jive's closing stock price during the three months ending on April 28, 2017. Jive's Board of Directors has unanimously approved the merger agreement and recommends that Jive stockholders tender their shares in the tender offer.

> "As the leader of the enterprise collaboration category, Jive has pushed the boundaries in how people work together for the past 16 years. It's this focus and vision that has enabled us to deliver industry-leading product innovation, attract a top-notch customer base with recognized global brands and achieve record earnings and profitability in the last announced quarter," said Elisa Steele, CEO of Jive. "With Jive and Aurea coming together, we can deliver the superior end-to-end employee and customer experience companies require in today's digital landscape."

Aurea provides the technology platform and worldwide delivery capability to enable companies to build, execute, monitor and optimize the end-to-end customer journey across a diverse range of industries.

"Jive, in combination with Aurea, enables us to bring customer experience and employee and customer engagement together. We look forward to helping Jive clients get the maximum value out of their investment with Jive," said Scott Brighton, CEO of Aurea. "Everything we do is driven by our singular core value of client success."

**Insiders' Interests in the Proposed Transaction**

62.    Jive and Wave insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.   The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Jive.

63.    Company insiders stand to reap substantial financial benefits for securing the deal with Wave.   Pursuant to the Merger Agreement, each Company option and restricted stock unit will be converted into the right to receive cash payments.   The following table summarizes the cash payments the executive officers stand to receive in connection with their vested and unvested equity awards, as well as their outstanding shares of Company common stock in the Tender Offer:

| Name | Number of Shares Owned (1) | Cash Consideration for Owned Shares ($) (2) | Shares Subject to Outstanding In-the-Money Options (3) | Option Consideration for In-the-Money Vested Options($) (4) | Option Consideration for Accelerating In-the-Money Unvested Options($) (5) (6) (7) | Number of Outstanding Restricted Stock Units (8) | Restricted Stock Unit Consideration for Accelerating Restricted Stock Units ($) (9) (10) | Aggregate Cash Consid- eration ($) |
|---|---|---|---|---|---|---|---|---|
| *Directors* | | | | | | | | |
| Tony Zingale | 164,053 | 861,278 | 547,361 | 1,915,764 | — | — | — | 2,777,042 |
| Margaret Breya | 109,484 | 574,791 | — | — | — | — | — | 574,791 |
| Steve Darcy | 13,228 | 69,447 | 109,890 | 40,385 | 121,153 | 39,682 | 208,331 | 439,316 |
| Phil Koen | 15,152 | 79,548 | 124,224 | 83,269 | 158,968 | 39,772 | 208,803 | 530,588 |
| Robert Frankfurt | — | — | — | — | — | 38,461 | 201,920 | 201,920 |
| Tom Reilly | 133,322 | 699,941 | — | — | — | — | — | 699,941 |
| Chuck Robel | 152,582 | 801,056 | 120,000 | 288,000 | — | — | — | 1,089,056 |
| Gabrielle Toledano | 17,293 | 90,788 | 81,665 | 6,789 | 8,728 | 22,232 | 116,718 | 223,023 |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Balaji Yelamanchili | — | — | 96,993 | — | 83,414 | 45,558 | 239,180 | 322,594 |
| *Executive Officers* | | | | | | | | |
| Elisa Steele* | 445,934 | 2,341,154 | 380,000 | — | 554,800 | 487,926 | 2,561,612 (11) | 5,457,566 |
| Ofer Ben-David | 144,838 | 760,400 | 120,000 | — | 175,200 | 191,250 | 1,004,063 | 1,939,663 |
| Jeff Lautenbach | 96,278 | 505,460 | 215,000 | 7,987 | 184,225 | 147,500 | 774,375 | 1,472,047 |
| Bryan LeBlanc | 142,065 | 745,841 | 961,029 | 3,615,311 | 219,000 | 120,594 | 633,119 | 5,213,271 |
| David Puglia | 38,811 | 203,758 | 250,000 | 13,161 | 126,125 | 71,250 | 374,063 | 717,107 |

64. Moreover, if they are terminated in connection with the Proposed Transaction, Jive's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation. The following table sets forth the golden parachute compensation the Company's named executive officers stand to receive:

| Name | Cash ($) (1) | Equity ($) (2) | Perquisites/ Benefits ($) (3) | Total ($) |
|---|---|---|---|---|
| Elisa Steele | 1,500,000 | 3,116,412 | 36,000 | 4,652,412 |
| Ofer Ben-David | 400,000 | 1,179,263 | 24,000 | 1,603,263 |
| Jeff Lautenbach | 400,000 | 958,600 | 24,000 | 1,382,600 |
| Bryan LeBlanc | 400,000 | 852,119 | 24,000 | 1,276,119 |
| David Puglia | 300,000 | 500,108 | 24,000 | 824,108 |

**The Recommendation Statement Contains Material Misstatements or Omissions**

65. The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Jive's stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in connection with the Tender Offer.

66. Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Jive's financial projections, relied upon by Jive's financial advisor Morgan Stanley; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley; and (iii) the background process leading to the Proposed Transaction. Accordingly, Jive stockholders are

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

being asked to make a decision whether to tender their shares in connection with the Tender Offer without all material information at their disposal.

***Material Omissions Concerning Jive's Financial Projections***

67.    The Recommendation Statement fails to disclose material information relating to the Company's financial projections provided by Jive's management and relied upon by Morgan Stanley for its analyses.

68.    For example, the Recommendation Statement sets forth:

> Morgan Stanley performed a discounted cash flow analysis, which is designed to provide an implied value of an asset using estimates of the future unlevered free cash flows generated by the asset, taking into consideration the time value of money with respect to those future cash flows by calculating their "present value." The "unlevered free cash flows" refers to a calculation of the future cash flows generated by an asset without including in such calculation any debt servicing costs. "Present value" refers to the current value of the future cash flows generated by the asset, and is obtained by discounting those cash flows back to the present using a discount rate that takes into account macro-economic assumptions and estimates of risk, the opportunity cost of capital and other appropriate factors. "Terminal value" refers to the present value of all future cash flows generated by the asset for periods beyond the projections period.

> Morgan Stanley used estimates from the Jive Projections and extrapolations from the Jive Projections for purposes of the discounted cash flow analysis, as more fully described below. Morgan Stanley calculated the present value of estimated unlevered free cash flows for the Company for the period from the second quarter of 2017 through the fourth quarter of 2017 and each of the calendar years 2018 through 2022.

The Recommendation Statement, however, fails to disclose the Company's unlevered, after-tax free cash flows for the projection period.

69.    In addition, the Recommendation Statement states that "[t]he financial projections prepared by Company management and provided to Morgan Stanley and potential acquirors were updated periodically during the course of the solicitation process to reflect changes in Jive's business environment and the new financial results of the Company as they became available."    However, the Recommendation Statement fails to disclose any

1    information concerning the periodic update to management's projections during the course of

2    the solicitation process, including but not limited to the full details of the previous

3    projections, the timing and basis of the updates, and when the Jive Projections were finalized.

4    The full details of these projections – management and the Board's best outlook of the

5    Company during the course of the solicitation process – are essential for stockholders to

6    make an informed decision with respect to the Proposed Transaction.

7        70.    The omission of this information renders the following statements in the

8    Recommendation Statement false and/or materially misleading in contravention of the

9    Exchange Act:

10

11        (a)    From page 32 of the Recommendation Statement:

12

| | Jive Projections Year Ended December 31, | | | | | | |
|---|---|---|---|---|---|---|---|
| (in $ millions, other than EPS) | 2016A | 2017E | 2018E | 2019E | 2020E | 2021E | 2022E |
| **Total Revenue** | $204.1 | $201.7 | $204.7 | $208.9 | $218.8 | $231.2 | $245.3 |
| Non-GAAP Cost of Goods Sold | 62.9 | 61.2 | 58.9 | 56.1 | 55.7 | 55.7 | 56.5 |
| **Non-GAAP Gross Profit** | 141.2 | 140.5 | 145.8 | 152.8 | 163.1 | 175.5 | 188.8 |
| Sales & Marketing Expenses | 71.1 | 65.5 | 67.3 | 69.1 | 71.9 | 75.5 | 80.3 |
| Research & Development Expenses | 41.9 | 44.0 | 43.0 | 41.5 | 41.1 | 40.7 | 40.7 |
| General and Administrative Expenses | 19.7 | 18.7 | 18.0 | 17.2 | 17.2 | 17.2 | 18.2 |
| Non-GAAP Operating Expenses | 132.7 | 128.2 | 128.3 | 127.7 | 130.1 | 133.3 | 139.1 |
| **Non-GAAP Operating Income** | 8.5 | 12.3 | 17.5 | 25.1 | 33 | 42.2 | 49.7 |
| Other Income / (Expense) | 0.6 | 0 | 0 | 0 | 0 | 0 | 0 |
| Interest Expense, Net | 0.4 | 0.6 | 0.7 | 0.9 | 1.2 | 1.8 | 2.5 |
| Tax Expense | (1.2) | (1.0) | (1.0) | (1.0) | (1.0) | (1.0) | (1.0) |
| **Non-GAAP Net Income** | 8.3 | 11.9 | 17.2 | 24.9 | 33.2 | 43.0 | 51.2 |
| **EBITDA** | 18.0 | 19.3 | 22.8 | 28.3 | 36.1 | 45.2 | 52.7 |
| **Levered Free Cash Flow** | 1.0 | 2.9 | 11.1 | 17.3 | 24.5 | 33.9 | 39.5 |
| Fully-diluted Weighted Average Shares Outstanding | 79.7 | 82.4 | 85.8 | 89.2 | 92.9 | 96.6 | 100.6 |
| **Earnings Per Share** | $ 0.10 | $ 0.14 | $ 0.20 | $ 0.28 | $ 0.36 | $ 0.44 | $ 0.51 |

22

23        (b)    From pages 13-14 of the Recommendation Statement:

24    The financial projections prepared by Company management and provided to
      Morgan Stanley and potential acquirors were updated periodically during the
25    course of the solicitation process to reflect changes in Jive's business environment
      and the new financial results of the Company as they became available. Such
26    financial projections reflected numerous estimates and assumptions with respect
      to, among other things, future economic, competitive and regulatory conditions
27    and financial market conditions, all of which are difficult or impossible to predict
      and many of which are beyond Jive's control. Such financial projections, including

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the selection of financial data included therein, are subjective in many respects and thus are susceptible to multiple interpretations and periodic revisions based on actual experience and business developments. As such, such financial projections constitute forward-looking information and are subject to risks and uncertainties, including the various risks set forth in Jive's annual report on Form 10-K for the fiscal year ended December 31, 2016, as amended, in Jive's quarterly report on Form 10-Q for the fiscal quarter ended March 31, 2017, and in the other reports filed by the Company with the SEC. Such financial projections are also subject to the same assumptions and limitations as the Jive Projections, which are further described in the section of this Schedule 14D-9 captioned "—*Projected Financial Information.*"

### Material Omissions Concerning Morgan Stanley's Financial Analyses

71.    The Recommendation Statement describes Morgan Stanley's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Morgan Stanley's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to tender their shares in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Jive's stockholders.

72.    For example, with respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Recommendation Statement fails to disclose: (a) why Morgan Stanley utilized publicly available estimates of revenue and EBITDA prepared by equity research analysts for Jive for each of the calendar years 2017 and  2018 rather than the Company's internal revenue and EBITDA estimates as set forth in the Jive Projections; (b) the specific revenue and EBITDA estimates prepared by equity research analysts for Jive for each of the calendar years 2017 and  2018; and (c) whether Morgan Stanley performed any benchmarking analyses for Jive in relation to the target companies.

73.     With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Recommendation Statement fails to disclose Jive's 2018 net cash estimates, which were prepared by or based upon direct input from Company management.

74.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (a) the definition of unlevered free cash flows; (b) the estimated unlevered free cash flows for the Company for the period from the second quarter of 2017 through the fourth quarter of 2017 and each of the calendar years 2018 through 2022 as well as the estimated unlevered free cash flows of the Company after the year 2022 ; (c) the inputs used to derive the range of discount rates of 8.17% to 10.55%; and (d) the implied terminal value multiples resulting from the analysis.

75.     With respect to Morgan Stanley's *Precedent Transactions Analysis*, the Recommendation Statement fails to disclose: (a) the individual ratios for each of the selected comparable transactions analyzed by Morgan Stanley, or, at a minimum, the mean and median; (b) which transactions were excluded from the analysis because their AV/ LTM and AV/NTM EBITDA Ratios were not meaningful; (c) the specific reason that Morgan Stanley excluded certain transactions because their AV/ LTM and AV/NTM EBITDA Ratios were not meaningful; (d)  the specific revenue and EBITDA estimates for Jive for each of the calendar years 2016 and  2017 based on the Street Case; and (e) why Morgan Stanley utilized revenue and EBITDA estimates for Jive for each of the calendar years 2016 and  2017 based on the Street Case rather than the Company's internal revenue and EBITDA estimates as set forth in the Jive Projections.

76.     The omission of this information renders the following statements in the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act:

(a)      From pages 36-38 of the Recommendation Statement:

*Public Trading Comparables Analysis*

Morgan Stanley performed a public trading comparables analysis, which attempts to provide an implied value of a company by comparing it to similar companies that are publicly traded. Morgan Stanley reviewed and compared publicly available consensus equity analyst research estimates for the Company with comparable publicly available equity analyst research estimates for certain selected companies that share similar business characteristics such as those that have certain comparable operating characteristics including, among other things, similarly sized revenue and/or revenue growth rates, market capitalizations, profitability, scale and/or other similar operating characteristics that Morgan Stanley determined, upon the application of its professional judgment and experience, to be similar to the Company (we refer to these companies as the comparable companies). The companies used in this comparison included the following:

- Barracuda Networks, Inc.

- Bazaarvoice, Inc.

- Brightcove Inc.

- eGain Corporation

- EnerNOC, Inc.

- Guidance Software, Inc.

- LivePerson, Inc.

- MicroStrategy Incorporated

- Progress Software Corporation

- Radware Ltd.

- ServiceSource International, Inc.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The above companies were chosen based on Morgan Stanley's knowledge of the industry and because they have businesses that may be considered similar to the Company's. Although none of such companies are identical or directly comparable to the Company, these companies are publicly traded companies with operations and/or other criteria, such as lines of business, markets, business risks, growth prospects, maturity of business and size and scale of business, that for purposes of its analysis Morgan Stanley considered similar to those of the Company.

For purposes of this analysis, Morgan Stanley analyzed:

- the ratio of aggregate value ("AV") (calculated as the market value of equity plus total debt, net of cash and cash equivalents) to estimated revenue, which we refer to as AV / Revenue Ratio, for each of calendar year 2017 and calendar year 2018; and

- the ratio of AV to estimated EBITDA (calculated as net income excluding net interest expense, income tax expense and certain other non-cash and non-recurring items, principally depreciation, amortization and stock-based compensation), which we refer to as AV / EBITDA Ratio, for each of calendar year 2017 and calendar year 2018.

Results of the analysis were presented for the comparable companies, as indicated in the following tables:

*AV / Revenue Ratios:*

| | CY2017E AV / Revenue | CY2018E AV / Revenue |
|---|---|---|
| Barracuda Networks, Inc. | 2.5x | 2.3x |
| Bazaarvoice, Inc. | 1.8x | 1.7x |
| Brightcove Inc. | 1.7x | 1.6x |
| eGain Corporation | 0.9x | N/A |
| EnerNOC, Inc. | 0.6x | 0.6x |
| Guidance Software, Inc. | 1.8x | 1.7x |
| LivePerson, Inc. | 1.8x | 1.7x |
| MicroStrategy Incorporated | 3.0x | 2.9x |
| Progress Software Corporation | 3.4x | 3.4x |
| Radware Ltd. | 2.1x | 1.9x |
| ServiceSource International, Inc. | 1.2x | 1.2x |

*AV / EBITDA Ratios:*

|  | CY2017E AV / EBITDA | CY2018E AV / EBITDA |
|---|---|---|
| Barracuda Networks, Inc. | 13.5x | 11.0x |
| Bazaarvoice, Inc. | 22.2x | 12.8x |
| Brightcove Inc. | 32.7x | 23.1x |
| eGain Corporation | N.M. | N.A. |
| EnerNOC, Inc. | N.M. | N.M. |
| Guidance Software, Inc. | 16.8x | 13.6x |
| LivePerson, Inc. | 19.8x | 18.9x |
| MicroStrategy Incorporated | 11.6x | 10.3x |
| Progress Software Corporation | 9.4x | 9.4x |
| Radware Ltd. | N.M. | 23.5x |
| ServiceSource International, Inc. | 23.8x | 13.9x |

\*      AV / EBITDA greater than 40.0x labeled as "N.M."

Based on its analysis of the relevant metrics for each of the comparable companies and upon the application of its professional judgment, Morgan Stanley selected representative ranges of the AV / Revenue Ratio and the AV / EBITDA Ratio for each of the calendar years 2017 and 2018 and applied these ranges of multiples to the relevant company financial statistics, utilizing publicly available estimates of revenue and EBITDA prepared by equity research analysts, available as of April 30, 2017. Based on the outstanding shares of Common Stock on a fully-diluted basis as of April 30, 2017, Morgan Stanley calculated the estimated implied value per share of Common Stock as of April 30, 2017 as follows:

| Street Case | Selected Comparable Company Multiple Ranges | Implied Present Value Per Share of Common Stock ($) |
|---|---|---|
| CY2017E AV / Revenue | 1.0x – 1.75x | $      3.69 - $5.36 |
| CY2018E AV / Revenue | 1.0x – 1.75x | $      3.73 - $5.42 |
| CY2017E AV / EBITDA | 10.0x – 20.0x | $      3.91 - $6.33 |
| CY2018E AV / EBITDA | 9.0x – 16.0x | $      3.94 - $5.86 |

Morgan Stanley compared the foregoing range of implied present value per share of Common Stock to (1) the closing price per share of Common Stock of $4.50 on April 17, 2017, the trading day on which the Exclusivity Agreement was executed, (2) the closing price per share of Common Stock of $5.05 on April 28, 2017, the trading day immediately prior to the execution of the Merger Agreement, and (3) the cash consideration of $5.25 per share.

No company included in the comparable public company analysis is identical to the Company. In evaluating comparable companies, Morgan Stanley made judgments and assumptions with regard to industry performance, general business, economic, market and financial conditions and other matters, which are beyond the control of the Company. These include, among other things, the impact of competition on the business of the Company and the industry generally, industry

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

growth, and the absence of any adverse material change in the financial condition and prospects of the Company and the industry, and in the financial markets in general. Mathematical analysis (such as determining the mean or median) is not in itself a meaningful method of using comparable company data.

(b)    From page 38 of the Recommendation Statement:

*Discounted Equity Value Analysis*

Morgan Stanley performed a discounted equity valuation analysis, which is designed to provide insight into the potential future equity value of a company as a function of such company's estimated future earnings. The resulting equity value is subsequently discounted to arrive at an estimate of the implied present value of such company's equity value. In connection with this analysis, Morgan Stanley calculated a range of implied present equity values per share of Common Stock on a standalone basis. To calculate the discounted equity value, Morgan Stanley used calendar year 2018 net cash estimates and calendar year 2019 revenue and EBITDA estimates based on the Jive Projections. Morgan Stanley applied a range of forward multiples (derived from the public trading comparables analysis above and Morgan Stanley's application of its professional judgment and experience) to these estimates and applied a discount rate of 9.36%, which rate was selected, upon the application of Morgan Stanley's professional judgment and experience, to reflect an estimate of the Company's cash adjusted cost of equity.

Based on the average of the estimated 2018 and 2019 fully-diluted shares outstanding, as provided by the Company's management, Morgan Stanley calculated the estimated implied present value per share of Common Stock using the discounted equity valuation analysis as follows:

| | Selected Comparable Company Multiple Ranges | Implied Present Value Per Share of Common Stock ($) |
|---|---|---|
| AV / Revenue | 1.0x – 1.75x | $       3.14 - $4.64 |
| AV / EBITDA | 10.0x –20.0x | $       3.85 - $6.55 |

Morgan Stanley compared the foregoing ranges of implied present value per share of Common Stock to (1) the closing price per share of Common Stock of $4.50 on April 17, 2017, the trading day on which the Exclusivity Agreement was executed, (2) the closing price per share of Common Stock of $5.05 on April 28, 2017, the trading day immediately prior to the execution of the Merger Agreement, and (3) the cash consideration of $5.25 per share.

(c)    From page 39 of the Recommendation Statement:

*Discounted Cash Flow Analysis*

Morgan Stanley performed a discounted cash flow analysis, which is designed to provide an implied value of an asset using estimates of the future unlevered free cash flows generated by the asset, taking into consideration the time

value of money with respect to those future cash flows by calculating their "present value." The "unlevered free cash flows" refers to a calculation of the future cash flows generated by an asset without including in such calculation any debt servicing costs. "Present value" refers to the current value of the future cash flows generated by the asset, and is obtained by discounting those cash flows back to the present using a discount rate that takes into account macro-economic assumptions and estimates of risk, the opportunity cost of capital and other appropriate factors. "Terminal value" refers to the present value of all future cash flows generated by the asset for periods beyond the projections period.

Morgan Stanley used estimates from the Jive Projections and extrapolations from the Jive Projections for purposes of the discounted cash flow analysis, as more fully described below. Morgan Stanley calculated the present value of estimated unlevered free cash flows for the Company for the period from the second quarter of 2017 through the fourth quarter of 2017 and each of the calendar years 2018 through 2022. Morgan Stanley also calculated a range of terminal values for the Company by applying a perpetual growth rate ranging from 1.0% to 3.0% to the estimated unlevered free cash flows of the Company after the year 2022. Morgan Stanley selected this perpetual growth rate range based on the application of Morgan Stanley's professional judgment and experience. The estimated unlevered free cash flows and the range of terminal values were then discounted to present values at March 31, 2017 using a range of discount rates from 8.17% to 10.55%, which range of discount rates were selected, upon the application of Morgan Stanley's professional judgment and experience, to reflect the Company's estimated weighted average cost of capital.

This analysis indicated the following range of implied present value per share of Common Stock.

| Implied Present Value Per Share of Common Stock |
| --- |
| $3.44 – $5.70 |

Morgan Stanley compared the foregoing range of implied present value per share of Common Stock to (1) the closing price per share of Common Stock of $4.50 on April 17, 2017, the trading day on which the Exclusivity Agreement was executed, (2) the closing price per share of Common Stock of $5.05 on April 28, 2017, the trading day immediately prior to the execution of the Merger Agreement, and (3) the cash consideration of $5.25 per share.

(d)      From pages 39-41 of the Recommendation Statement:

*Precedent Transactions Analysis*

Morgan Stanley performed a precedent transactions analysis, which is designed to imply a value of a company based on publicly available financial terms and premia of selected transactions that share some characteristics with the merger.

- 23 -

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*Precedent Multiples*. In connection with its analysis, Morgan Stanley compared publicly available statistics for selected software transactions involving businesses that Morgan Stanley judged to be similar in certain respects to the Company's business or aspects thereof based on Morgan Stanley's professional judgment and experience, with an equity value between $250 million and $750 million occurring between January 1, 2010 and April 28, 2017. The following is a list of the transactions reviewed:

| Date Announced | Acquiror | Target |
|---|---|---|
| September 8, 2016 | Google Inc. | Apigee Corporation |
| July 13, 2016 | Thoma Bravo, LLC | Imprivata, Inc. |
| May 31, 2016 | Accel-KKR | SciQuest, Inc. |

| Date Announced | Acquiror | Target |
|---|---|---|
| May 2, 2016 | Oracle Corporation | Opower, Inc. |
| April 19, 2016 | Experian plc | CSIdentity Corporation |
| August 10, 2015 | Envestnet, Inc. | Yodlee, Inc. |
| May 25, 2015 | CA Technologies | Rally Software Development Corp. |
| May 5, 2015 | Pitney Bowes Inc. | Borderfree, Inc. |
| April 30, 2015 | Francisco Partners | ClickSoftware Technologies Ltd. |
| February 10, 2015 | Vector Capital | Saba Software, Inc. |
| December 5, 2014 | Open Text Corporation | Actuate Corporation |
| April 7, 2014 | GTCR Valor Companies, Inc. | Vocus, Inc. |
| January 30, 2014 | Dassault Systemes SA | Accelrys Inc. |
| November 7, 2013 | Autodesk Inc. | Delcam plc |
| June 24, 2013 | Thoma Bravo, LLC | Keynote Systems, Inc. |
| January 17, 2012 | Blackbaud, Inc. | Convio, Inc. |
| December 8, 2011 | IBM | DemandTec, Inc. |
| November 30, 2011 | Synopsys, Inc. | Magma Design Automation, Inc. |
| September 27, 2011 | Permira Funds | Renaissance Learning, Inc. |
| April 7, 2011 | Parametric Technology Corporation (now PTC) | MKS Inc. |
| August 13, 2010 | IBM | Unica Corporation |
| June 3, 2010 | Thoma Bravo, LLC | SonicWALL, Inc. |
| June 2, 2010 | Sonic Solutions | DiVX, Inc. |
| March 8, 2010 | CCMP Capital Advisors, LLC | Infogroup Inc. |

For each transaction listed above, Morgan Stanley noted the ratio of AV of the transaction to each of the target company's revenue and EBITDA for the twelve-month period prior to the announcement date of the applicable transaction, which is referred to as LTM Revenue and LTM EBITDA, respectively, and the ratio of AV of the transaction to each of the target company's estimated revenue and EBITDA for the twelve-month period following the announcement date of the applicable transaction, which is referred to as NTM Revenue and NTM EBITDA, respectively.

Results of the analysis were presented for the selected companies, as indicated in the following table:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

| | Low | High |
|---|---|---|
| AV / LTM Revenue Ratio | 1.3x | 6.0x |
| AV / NTM Revenue Ratio | 1.2x | 4.7x |
| AV / LTM EBITDA Ratio* | 7.8x | 37.4x |
| AV / NTM EBITDA Ratio* | 5.8x | 41.7x |

\* Excluding certain transactions for which the ratio was not meaningful.

Based on its analysis of the relevant metrics for each of the comparable transactions and upon the application of its professional judgment, Morgan Stanley selected representative ranges of the AV / LTM Revenue Ratio multiples, AV / NTM Revenue Ratio multiples, AV / LTM EBITDA Ratio multiples and AV / NTM EBITDA Ratio multiples and applied these ranges of multiples to the Company's revenues and EBITDA, as applicable, for calendar years 2016 and 2017 (based on the Street Case), respectively.

Morgan Stanley then calculated a range of implied present values per share of Common Stock as follows:

| | Selected Representative Multiple Range | Implied Present Value Per Share of Common Stock ($) |
|---|---|---|
| AV / LTM Revenue Ratio | 1.5x – 2.5x | $ 4.86 - $7.09 |
| AV / NTM Revenue Ratio | 1.5x – 2.5x | $ 4.81 - $7.00 |
| AV / LTM EBITDA Ratio | 15.0x – 21.0x | $ 4.46 - $5.65 |
| AV / NTM EBITDA Ratio | 12.0x – 19.0x | $ 4.40 - $6.09 |

Morgan Stanley compared the foregoing range of implied present value per share of Common Stock to (1) the closing price per share of Common Stock of $4.50 on April 17, 2017, the trading day on which the Exclusivity Agreement was executed, (2) the closing price per share of Common Stock of $5.05 on April 28, 2017, the trading day immediately prior to the execution of the Merger Agreement, and (3) the cash consideration of $5.25 per share.

77.    Without such undisclosed information, Jive stockholders cannot evaluate for themselves whether the financial analyses performed by Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Morgan Stanley's

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

opinion and analyses should factor into their decision whether to tender their shares in support of the Proposed Transaction.

***Material Omissions Concerning the Flawed Process***

78.    The Recommendation Statement also fails to disclose or misstates material information relating to the background process leading up to the Proposed Transaction, including:

(a)    whether the confidentiality agreements entered into between the Company and (i) Party A and Francisco Partners in October 2015; (ii) Party B, Party C, Party D and Party F in January 2016; and (iii) Party H and Party I in January and February 2017 contained standstill provisions that are still in effect and/or "don't-ask-don't-waive" standstill provisions that are presently precluding these industry participants from making a topping bid for the Company;

(b)    The details of Engine Capital LP's February 21, 2017 letter to the Board;

(c)    With respect to the April 17, 2017 Board meeting, the details of the Board's "significant concerns regarding the likelihood that Party G would complete a transaction on the terms it was proposing, if at all" in light of Party G's April 16, 2017 final non-binding proposal which increased its proposed purchase price to $5.35 per share in cash, eliminated or mitigated a number of the terms on its material issues list that previously created meaningful closing risk to its proposal, and withdrew its request for support agreements from some of the Company's largest stockholders not represented to the Board; and

(d)    The details of any discussions between the Board and Jive management related to the potential post-merger retention of Jive management by Party G or the ESW Group.

79.   Defendants' failure to provide Jive stockholders with the foregoing material information renders the statements in the "Recommendation of the Board" section of the Recommendation Statement false and/or materially misleading and constitutes a violation of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act, and SEC Rule 14d-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement.  Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to tender their shares in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Class Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9

80.   Plaintiff repeats all previous allegations as if set forth in full.

81.   Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Jive stockholders to tender their shares in the Tender Offer.

82.   Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

83.   The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

84.   Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain

statements therein to be materially incomplete and therefore misleading.  Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

85.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision whether to tender their shares if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.  Plaintiff and Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Class Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

86.    Plaintiff repeats all previous allegations as if set forth in full.

87.    Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer.

88.    Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

89.   As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

### COUNT III

**Class Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

90.   Plaintiff repeats all previous allegations as if set forth in full.

91.   The Individual Defendants acted as controlling persons of Jive within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Jive and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

92.   Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

93.   In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual

Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

94. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

95. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Jive, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  May 16, 2017

WEISSLAW LLP

By: _____
Joel E. Elkins (SBN 256020)
9107 Wilshire Blvd, Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
Email: jelkins@weisslawllp.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS